WILLIAM R. ROSE, executor of the estate of John J. Rose, deceased, complainant-appellant,

*v.*

ALMA WINIFRED HUNT and WILLIAM CRYAN, defendants, respondents.

[Submitted May term, 1932. Decided October 17th, 1932.]

*Mr. Thomas Brunetto,* for the appellant.

*Mr. Charles Jones,* for the respondents.

The opinion of the court was delivered by

WELLS, J.

This is a suit to set aside a deed from John J. Rose and Lyda B. Rose, his wife, conveying a house and lot in Bloomfield, New Jersey, owned by them as tenants by the entirety, to Frances Faverio, a deed from said Frances Faverio, conveying said house and lot to John J. Rose and William Cryan, and a mortgage executed thereon by said John J. Rose and wife and William Cryan, to Alma Winifred Hunt, on the

ground that the deeds and mortgage were procured by fraud and while Lyda B. Rose was critically ill and under the influence of opiates administered by her physician, and said John J. Rose was under the influence of intoxicating liquor furnished by the defendants.

Complainant also asks that the defendant Alma Winifred Hunt be ordered or directed to turn over to him all moneys received by her from proceeds derived from building and loan shares owned by Lyda B. Rose and obtained through undue influence from her while she was confined to her bed, suffering from a cancer from which she shortly thereafter died.

At the conclusion of the case the vice-chancellor said that the evidence convinced him beyond doubt that Mrs. Rose and Mr. Rose, at the time they executed the various documents were in their right minds, that they were perfectly rational and thoroughly understood what they were doing and acted of their own free will and accord, without any undue influence, fraud or connivance on the part of anybody and that with respect to the building and loan funds, he had no doubt that they were given to Mrs. Hunt by Mrs. Rose. The vice-chancellor accordingly advised a decree dismissing the bill of complaint and this appeal is from the decree so advised.

An examination of the evidence satisfies us the vice-chancellor was justified in his conclusions.

The testimony showed that William Cryan had boarded with Mr. and Mrs. John J. Rose for more than twenty-five years and that it was largely through his financial aid that the home was paid for and maintained; that John J. Rose seldom worked and was frequently intoxicated and was a "ne'er do well;" that Mrs. Hunt, the sister of Mrs. Rose, had been for several months living at the Rose home, nursing Mrs. Rose, and that it was the earnest desire of Mrs. Rose that after her death, which she knew was imminent, her husband, sister and Mr. Cryan should continue to occupy the home together, and with that in mind and the additional thought of compensating to some extent Mr. Cryan for the money he had advanced, and her sister for her services, and to provide a home for her husband with people with whom

he had been accustomed to live and who would look after him, she sent for Mr. James P. Mylod, a lawyer of ability and standing, for the purpose of having him draw her will, leaving the house and lot, which she thought belonged solely to her, share and share alike to her husband, John J. Rose, her sister, Mrs. Winifred Hunt, and her friend, William Cryan.

Mr. and Mrs. Rose had known Mr. Mylod since his childhood and at Mrs. Rose's suggestion, her husband called his office on the telephone for the purpose of having him call at the home to see Mrs. Rose, who was then confined to her bed by her sickness.

Mr. Mylod was not in and was finally reached by telephone by Mr. Cryan, whom Mrs. Rose had also asked to call him.

Mr. Mylod called and saw Mrs. Rose alone and was informed by her that she wanted him to draw a will leaving her property to her husband, her sister and Mr. Cryan, equally. Mr. Mylod asked to see the deed for the property and upon examining it he found that the title to the property was in the names of John J. Rose and Lyda B. Rose, as husband and wife.

Mr. Mylod informed Mrs. Rose that she was not the sole owner of the property and that upon her predeceasing her husband, the property would belong to him and would not be effected by her will.

Mr. Mylod was also informed that Mrs. Hunt was not living with her husband. She could not, therefore, safely take title in her name. After fully explaining the legal situation to Mrs. Rose, Mr. Mylod finally suggested that the property, which was valued at $6,500, with a $500 mortgage against it, might be conveyed by Mr. and Mrs. Rose to Mr. Mylod's stenographer, Miss Faverio, and by Miss Faverio to John J. Rose and Mr. Cryan, and that they in turn might give a mortgage for $2,000 on the property to Mrs. Hunt. Since this was all the property Mrs. Rose owned, this plan would carry out Mrs. Rose's wishes for an equal division of the property among the three and there would be no need of a will.

The interview between Mr. Mylod and Mrs. Rose was at first confined to the two, but finally Mr. Rose, Mrs. Hunt, Mr. Cryan and Mrs. Hunt's daughter were called in and the situation and plan fully explained, and acquiesced in by Rose and all the others.

The transaction was eventually carried out as proposed. After the deeds had been executed by Mr. and Mrs. Rose and Miss Faverio, and the mortgage by Mr. and Mrs. Rose and Mr. Cryan, all the papers were delivered to Mr. Mylod to be recorded.

Prior to the transfer of the house and lot, Mrs. Rose, who owned building and loan stock worth about $700, sent Mrs. Hunt with the certificate of the secretary of the building and loan association and received a check, payable to Mrs. Rose, for the withdrawal value of the stock and this check was given to Mrs. Rose, who endorsed it and the check was then taken back to the building and loan association and the cash obtained and brought back and given to Mrs. Rose, who counted it, and put it in a wallet and gave it to her sister, Mrs. Hunt, saying, "here, Winnie, this is yours."

The appellant seems to have abandoned the attempt to prove there was any fraud or undue influence in this transaction. The evidence was all to the contrary and the vice-chancellor so found.

Counsel for appellant argues reasons for setting aside the conveyances which were not presented to the court below and not set forth in the pleadings. He contends that Mr. and Mrs. Rose did not have the benefit of independent legal advice to which they were entitled under the circumstances of the case and the decisions of our courts, and that there was no *delivery* of the deeds and mortgage, and that, therefore, they are void.

These contentions may be answered briefly by saying that Mr. Mylod certainly represented Mrs. Rose and we fail to see why it was necessary for Mr. Rose to have any independent advice because the conditions were not present that required it.

There is no suggestion of a dominant personality in the

case, and consequently the burden of proving that the instruments were procured by fraud remained on complainant, but, assuming that the burden of proof had shifted to defendants, we are of the opinion that they successfully carried the burden of proof by showing that there was no fraud in the transaction.

As to the point that there was no delivery of the deeds and mortgage to the parties concerned, it is necessary only to say that the testimony showed that after Mr. Mylod had drawn the papers, Mr. and Mrs. Rose and Miss Faverio signed the deeds and Mr. Mylod took their acknowledgments, then Mr. and Mrs. Rose and Mr. Cryan signed the mortgage to Mrs. Hunt, and Mr. Mylod took their acknowledgments; then he took all the papers away with him and had them recorded.

We think that so far as *delivery* is concerned, it was complete when the respective parties had signed, sealed and acknowledged the respective papers and entrusted them to Mr. Mylod to put on record.

By virtue of this, Mr. Mylod became the agent of John J. Rose and wife to deliver the deed to Miss Faverio, and the agent of Miss Faverio to deliver the deed to John J. Rose and William Cryan, and the agent of John J. Rose and William Cryan to deliver the mortgage to Alma Winifred Hunt.

This is primarily a fact case and there being ample evidence to sustain the findings of the vice-chancellor we are of the opinion that the decree below dismisisng the bill of complaint should be affirmed.

*For affirmance*—The Chancellor, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Brogan, Van Buskirk, Kays, Dear, Wells, Kerney, JJ. 13.

*For reversal*—None.